01

02

03

04

05                          UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
06                                      AT SEATTLE

07   KATHRYN CASEY,                          )     CASE NO. C06-1644-JLR-MAT
                                             )
08          Plaintiff,                       )
                                             )
09          v.                               )     REPORT AND RECOMMENDATION
                                             )     RE: SOCIAL SECURITY
10   MICHAEL J. ASTRUE,                       )     DISABILITY APPEAL
     Commissioner of Social Security         )
11                                           )
            Defendant.                       )
12   _____ )

13          Plaintiff Kathryn Casey proceeds through counsel in her appeal of a final decision of the

14   Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied

15   plaintiff's application for Disability Insurance (DI) benefits after a hearing before an Administrative

16   Law Judge (ALJ).  Having considered the ALJ's decision, the administrative record (AR), and all

17   memoranda of record, it is recommended that this matter be REMANDED for further

18   administrative proceedings.

19                            **FACTS AND PROCEDURAL HISTORY**

20          Plaintiff was born on XXXX, 1949.[1]  She has a General Equivalency Degree and completed

21   _____

22          [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
     General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

     REPORT AND RECOMMENDATION RE:
     SOCIAL SECURITY DISABILITY APPEAL
     PAGE -1

01 │ two years of college. Plaintiff previously worked as a cashier, molder, and small product

02 │ assembler.

03 │      Plaintiff filed her application for DI benefits in April 2003, alleging disability since July 11,

04 │ 2002. (AR 54-56.)  Her application was denied at the initial level and on reconsideration and she

05 │ timely requested a hearing.  On November 10, 2004, ALJ Verrell Dethloff held a hearing, taking

06 │ testimony from plaintiff. (AR 319-38.)  On February 6, 2005, ALJ Dethloff issued a decision

07 │ finding plaintiff not disabled.  (AR 18-29.)

08 │      Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on

09 │ September 2, 2006, making the ALJ's decision the final decision of the Commissioner. (AR 5-8.)

10 │ Plaintiff appealed to this Court.  Upon plaintiff's request, the Court held oral argument in this

11 │ matter on June 13, 2007.

12 │ **JURISDICTION**

13 │      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

14 │ **DISCUSSION**

15 │      The Commissioner follows a five-step sequential evaluation process for determining

16 │ whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

17 │ be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

18 │ engaged in substantial gainful activity since her alleged onset date of disability.  At step two, it

19 │ must be determined whether a claimant suffers from a severe impairment that limits one's ability

20 │ to work. The ALJ found plaintiff's brain tumor and residual mental limitations resulting from her

21 │

22 │ official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01  brain surgery not severe, but found the combination of degenerative disease of the cervical spine,

02  left shoulder impingement syndrome, obesity, and a history of a seizure disorder severe. Step three

03  asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that

04  plaintiff's impairments did not meet or equal the criteria for any listed impairment. If a claimant's

05  impairments do not meet or equal a listing, the Commissioner must assess residual functional

06  capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to

07  perform past relevant work.  The ALJ assessed plaintiff's RFC and found that she retains the

08  ability to perform her past relevant work as a cashier.  If a claimant demonstrates an inability to

09  perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that

10  the claimant retains the capacity to make an adjustment to work that exists in significant levels in

11  the national economy.  Finding plaintiff not disabled at step four, the ALJ did not proceed to step

12  five.

13       This Court's review of the ALJ's decision is limited to whether the decision is in

14  accordance with the law and the findings supported by substantial evidence in the record as a

15  whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

16  than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

17  mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

18  (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's

19  decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

20  2002).

21       Plaintiff argues that the ALJ erred when he determined she had no limitations in her ability

22  to reach or handle, contrary to the opinions of treating and examining physicians, failed to give

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01  clear and convincing reasons for rejecting her testimony or germane reasons for rejecting the lay

02  witness testimony, and that his determination that she had past relevant work as a cashier is not

03  supported by substantial evidence.  She  requests that the Court reverse the Commissioner's

04  decision and remand this case for payment of benefits.  The Commissioner argues that the ALJ's

05  decision is supported by substantial evidence and should be affirmed.

06       The Court has discretion to remand for further proceedings or to award benefits.  *See*

07  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The Court may direct an award of benefits

08  where "the record has been fully developed and further administrative proceedings would serve

09  no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

10       Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient
         reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that
11       must be resolved before a determination of disability can be made; and (3) it is clear
         from the record that the ALJ would be required to find the claimant disabled if he
12       considered the claimant's evidence.

13  *Id.* at 1076-77.  In this case, the Court finds further administrative proceedings warranted.

14                                       <u>Physicians' Opinions</u>

15       In general, more weight should be given to the opinion of a treating physician than to a

16  non-treating physician, and more weight to the opinion of an examining physician than to a non-

17  examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted

18  by another physician, a treating or examining physician's opinion may be rejected only for "'clear

19  and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

20  Where contradicted, a treating or examining physician's opinion may not be rejected without

21  "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

22  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01        "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of

02  a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*,

03  81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true,

04  plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.

05  1989)).   Crediting an opinion as a matter of law is appropriate when, taking that opinion as true,

06  the evidence supports a finding of disability.  *See*, *e.g.*, *Schneider v. Commissioner of Social Sec.

07  Admin.*, 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given

08  the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's]

09  functional limitations is sufficient to meet or equal [a listing.]"); *Smolen*, 80 F.3d at 1292 (ALJ's

10  reasoning for rejecting subjective symptom testimony, physicians' opinions, and lay testimony

11  legally insufficient; finding record fully developed and disability finding clearly required).

12        However, courts retain flexibility in applying this "'crediting as true' theory." *Connett v.

13  Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there

14  were insufficient findings as to whether plaintiff's testimony should be credited as true).  As stated

15  by one district court: "In some cases, automatic reversal would bestow a benefits windfall upon

16  an undeserving, able claimant." *Barbato v. Commissioner of Soc. Sec. Admin.* , 923 F. Supp.

17  1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ made a good faith

18  error, in that some of his stated reasons for rejecting a physician's opinion were legally

19  insufficient).

20  A.    Treating Physician Dr. Sjardo Steneker

21        Plaintiff argues that the ALJ failed to properly assess the opinions of her treating physician,

22  Dr. Sjardo Steneker, who consistently found her unable to work at her job as a molder or to

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01  perform any job duties.  (*See* AR 195, 205, 218, 221, 224, 228, 238, 242-43.)  In discussing Dr.

02  Steneker's opinions, the ALJ found as follows:

> The claimant has not submitted any medical records documenting her physical condition prior to January 2003. On January 31, 2003, she was evaluated by her primary care physician, Sjardo Steneker, M.D. The claimant complained of neck discomfort and pain radiating into her upper extremities, which she related to her L&I injury. Dr. Steneker diagnosed the claimant with cervical strain and radiculopathy in the upper extremities and stated that as a result of these injuries the claimant is not employable. A physical examination performed on February 11, 2003 showed normal muscle strength in the upper and lower extremities, normal reflexes, normal hand grip strength, and normal straight leg raise testing.

> Despite the normal results, Dr. Steneker completed a physical capacity evaluation stating the claimant cannot lift more than 5 pounds or sit and stand for more than 1 hour in an 8 hour workday. I accord zero weight to the opinions of Dr. Steneker due to the complete lack of support provided. Opinions may properly be disregarded where clinical and laboratory findings furnished by the treating physician do not support the opinions tendered.

> In 2003, the claimant was treated conservatively with physical therapy and range of motion exercises at home. During her follow up evaluations with Dr. Steneker, the claimant continued to have multiple somatic complaints, but almost no objective evidence of any impairments other than muscle spasms. For a long period of time she refused prescription pain medications, despite her reports of pain levels of up to 8 on a scale of 1 to 10.
> . . .

> The claimant continued to her follow up treatment with Dr. Steneker in 2003 and 2004. She was finally prescribed some pain medications including Cioxx and Celebrex, but reported no improvement in her symptoms. Her physical findings were unchanged and the claimant was not referred for any further orthopedic or neurological testing.

> Dr. Steneker's opinion about the claimant's ability to work also remained the same, essentially stating that the claimant is unable to perform any work. On February 25, 2004, he stated that the claimant cannot perform any lifting, will never improve, and cannot be helped by any modifications in the work place. On March 31, 2004, he stated that the claimant cannot sit, stand, or walk for more than 30 minutes at a time and cannot sit, stand or walk for more than 3 hours in an 8 hour workday. As noted I do not accord any weight to his urgent advocacy for his patient.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01          . . .

02          In the present case, I find that the opinion of Dr. Steneker should not be given
     controlling weight in this decision. Dr. Steneker's conclusions are not well supported
03       by medically acceptable clinical and laboratory diagnostic techniques and are
     inconsistent with other substantial evidence in the record. Dr. Steneker's own physical
04       examinations have not shown any evidence that the claimant has significant motor
     loss, muscle weakness, reflex loss, or sensory loss that would prevent her from
05       performing any lifting activities. In addition, her x-rays and MRIs have only shown
     mild degenerative changes in the spine and moderate changes in the left shoulder.
06       Consequently, Dr. Steneker appears to have relied entirely on the claimant's
     subjective allegations, when he formed his opinions. However, I find that the
07       claimant's subjective allegations are not entirely credible based on other substantial
     evidence in the record.

08

09   (AR 20, 22-23; internal citations to record and case citations omitted.)

10          Plaintiff avers that the ALJ erred in concluding that Dr. Steneker relied entirely on her

11   subjective complaints and points to his objective findings, including spasms of the levator scapulae

12   and trapezius muscles, and signs for subacromial bursitis, rotator cuff syndrome, and tendonitis

13   in her right shoulder. (*See, e.g.*, AR 236, 241.) (*See also* AR 162 (October 2003 report by Drs.

14   Valpey and Brigham reflected that imaging studies performed in March 2002 showed

15   abnormalities in plaintiff's left shoulder and cervical spine).) Plaintiff asserts that, even if Dr.

16   Steneker's opinions were not entitled to controlling weight, the ALJ actually stated he was giving

17   them zero weight and essentially found plaintiff had no limitations in the use of her upper

18   extremities. She maintains that the ALJ failed to provide sufficient reasons for rejecting this

19   treating physician's opinions and that his opinions should be credited as true.

20          The Commissioner points to findings by Dr. Steneker contradictory to his opinions as to

21   plaintiff's abilities (*see, e.g.*, AR 241 (finding, *inter alia*, plaintiff's upper and lower reflexes were

22   1-2 plus and symmetrical; normal hand grip strength, and 5/5 strength in all major muscle groups;

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01 and full range of motion in her right shoulder)), and argues that the ALJ appropriately relied on

02 these contradictions in rejecting Dr. Steneker's opinions. *See Bayliss v. Barnhart*, 427 F.3d 1211,

03 1216 (9th Cir. 2005) (discrepancy between a doctor's opinion of a claimant's abilities and that

04 doctor's clinical notes and recorded observations and opinions "is a clear and convincing reason

05 for not relying on the doctor's opinion."); *accord* Social Security Rulings (SSR) 96-2p.  The

06 Commissioner further avers that the objective findings pointed to by plaintiff reveal only mild to

07 moderate findings, and that detailed examinations show she had full range of motion in her

08 shoulders. (*See* AR 180-81, 214-17.)  The Commissioner also points to additional evidence of Dr.

09 Steneker's advocacy, revealed in a letter to the Department of Labor and Industries (L&I) in

10 which he opined that plaintiff was "definitely disabled and need [sic] to have a Disability Rating

11 Exam done, which I am happy to perform upon your request[]" (AR 204), and argues that the

12 opinion of a physician who is acting as an advocate is entitled to less weight.    *See Matney v.*

13 *Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).

14 　　　　In reply, plaintiff notes that, despite some normal testing results, the parties agree that the

15 record also contains abnormal findings.  She argues that Dr. Steneker is the most qualified person

16 to interpret the physical findings, and that, if the ALJ had questions about whether Dr. Steneker's

17 physical findings supported the limitations assessed, he could have recontacted Dr. Steneker or

18 called a medical expert to testify at the hearing. *See* 20 C.F.R. § 404.1512(e).  Plaintiff also rebuts

19 the assertion that Dr. Steneker was acting as an advocate, noting that he saw her on multiple

20 occasions, rendered his opinions in the course of his treatment, and identified objective findings.

21 *Cf. Matney*, 981 F.2d at 1020 (physician considered to have acted as an advocate had  examined

22 the claimant only once, produced a brief report, and relied primarily on the medical history and the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01  claimant's subjective complaints).  She also clarifies that the letter cited by the Commissioner as

02  evidence of advocacy was solicited by L&I.  (*See* AR 204.)

03       While plaintiff correctly identifies some abnormal objective findings related to her shoulder

04  and cervical spine, it does not follow that such abnormalities limited plaintiff to the extent opined

05  by Dr. Steneker.  Moreover, the ALJ did acknowledge the existence of the objective findings,

06  stating: "During her follow up evaluations with Dr. Steneker, the claimant continued to have

07  multiple somatic complaints, but almost no objective evidence of any impairments other than

08  muscle spasms." (AR 20.)  (*See also* AR 25 ("The claimant displayed some evidence of muscle

09  spasm and reduced range of motion during her physical examinations, but her muscle strength,

10  reflexes, and sensation are all normal."))  He nonetheless concluded that Dr. Steneker's physical

11  examinations did not reveal "significant motor loss, muscle weakness, reflex loss, or sensory loss

12  that would prevent her from performing any lifting activities[,]" and noted that "x-rays and MRIs

13  have only shown mild degenerative changes in the spine and moderate changes in the left

14  shoulder." (AR 23.)  Therefore, as argued by the Commissioner, the ALJ appropriately relied on

15  contradictory evidence in the record in rejecting Dr. Steneker's opinions.  *See, e.g.*, *Bayliss*, 427

16  F.3d at 1216.

17       Nor does the ALJ's depiction of Dr. Steneker's "urgent advocation for his patient[]"

18  present reversible error.  (AR 23.)  The Ninth Circuit Court of Appeals has held that, in the

19  absence of evidence of actual improprieties, an ALJ may not assume doctors routinely lie in order

20  to help their patients collect disability benefits.  *Lester*, 81 F.3d at 832.  The Ninth Circuit has also

21  accepted a physician's lack of objective medical evidence and reliance on subjective complaints

22  as evidence of actual impropriety, and upheld an ALJ's rejection of a physician's opinion under

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01   these circumstances as a permissible credibility determination.  *See Saelee v. Chater*, 94 F.3d 520,

02   521-23 (9th Cir. 1996) ("The ALJ pointed out that Dr. Aleman himself stated that he was unable

03   to establish any organic basis for most of Saelee's complaints and that he relied on her subjective

04   allegations, which the ALJ, in his discretion, disregarded as 'entirely untrustworthy.'")  In this

05   case, the ALJ pointed to the minimal amount of objective medical evidence and apparent reliance

06   on plaintiff's subjective complaints in rejecting Dr. Steneker's opinions.  ( *See* AR 20, 22-23.)

07   Also, in criticizing Dr. Steneker's "urgent advocation[,]" the ALJ specifically pointed to the fact

08   that, despite the consistently normal physical findings, Dr. Steneker's opinions remained decidedly

09   bleak, including a February 2004 assessment in which he opined that plaintiff could perform "no

10   lifting[,]" would not be helped by any job modification, and that he would "never" anticipate

11   altering the "no lifting" restriction. (AR 22-23, 309.)  Taken as a whole, these findings suffice to

12   support the ALJ's rejection of Dr. Steneker's opinions based, in part, on his advocacy. (AR 23.)

13          In sum, the ALJ provided sufficient reasons for rejecting the opinions of Dr. Steneker.  As

14   such, the ALJ's decision with respect to this treating physician should be affirmed.

15   B.    Examining Physicians Drs. Raymond Valpey and Lance Brigham

16          Following an Independent Medical Examination requested by L&I on October 23, 2003,

17   Drs. Raymond Valpey and Lance Brigham found:

18          The worker has limitations and restrictions. She should not be expected to work with
            her arms overhead or to do repetitive use of either proximal upper limb. These
19          limitations are due to the progressive nature of her acromioclavicular joint arthritis
            and impingement syndrome.
20

21   (AR166.)  The ALJ assessed the opinions of these examining physicians as follows:

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01    During Dr. Valpey's examination the claimant gave relatively little effort when testing
      neck range of motion and had tenderness to extremely light skin palpation. However,
02    when reexamined by Dr. Brigham she had no tenderness with even moderate
      palpation. Muscle strength, reflexes, and gait were essentially normal with no
03    evidence of neurological deficits.

04    Diagnoses included degenerative disc disease in the cervical spine with cervical strain
      and bilateral shoulder impingement syndrome with bilateral shoulder strain. An MRI
05    performed on October 30, 2003 showed only mild degenerative changes in the
      cervical spine.

06

07    The panel physicians recommended that the claimant avoid working with her arms
      overhead or repetitive use of either proximal upper limb. The physicians stated that
      they were imposing these limits due to the progressive nature of the claimant's
08    shoulder impairment, but noted that the claimant's radiographic findings themselves
      did not translate into any impairment rating. A limitation in standing was also
09    suggested due to the claimant's subjective complaints, but the evaluators noted that
      they could not find any impairment that would limit the claimant's ability to stand.

10

11    I have considered the opinion of the panel physicians, but give them little weight in
      this decision. Their opinion is inconsistent with the objective medical evidence, which
12    shows no significant neurological findings or degenerative changes that would limit
      the claimant's ability to use her arms. Further, within their own assessment these
13    physicians state that the claimant's degenerative changes are minor and her limitations
      of motion appear to be voluntary.

14    (AR 21; internal citations to record omitted.)

15        Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting

16    the opinions of Drs. Valpey and Brigham. She avers no basis for the assertion that she must have

17    neurological findings in order to establish limitations in the use of her arms. She further rejects

18    the ALJ's assertion as to a lack of objective medical evidence of degenerative changes, asserting

19    that her severe degenerative disease of the cervical spine and left shoulder impingement syndrome

20    could be expected to cause upper extremity pain and limit the use of her arms. Finally, plaintiff

21    notes that the finding as to "minor" degenerative changes related solely to her cervical spine, not

22    her shoulders, and that Drs. Valpey and Brigham based their limitations on her shoulder problems.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01  (*See* AR 166 ("With regard to the cervical spine, her level of impairment would be the equivalent

02  of Category 1 of cervical impairment.  Examination shows no evidence of radiculopathy or other

03  neurologic impairments resulting from the minor degenerative changes seen on imaging studies.

04  Her limitation of motion appears voluntary."; stating that arm limitations "are due to the

05  progressive nature of her acromioclavicular joint arthritis and impingement syndrome."))

06      In response, the Commissioner reiterates the ALJ's findings.  He argues that the ALJ

07  appropriately pointed to contradictions between the doctors' opinions as to plaintiff's abilities and

08  their own notes and recorded observations and opinions, *Bayliss*, 427 F.3d at 1216, as well as

09  their reliance on plaintiff's subjective complaints, *Morgan v. Commissioner*, 169 F.3d 595, 600-02

10  (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)).

11      The ALJ's assessment of the opinions of Drs. Valpey and Brigham is problematic in several

12  respects.  First, in criticizing the finding that the assessed limitations derived from the progressive

13  nature of plaintiff's shoulder impairment, the ALJ relies on the notation that "[t]he radiographic

14  findings themselves do not translate into an impairment rating" (AR 166), without any explanation

15  as to such an "impairment rating" and its significance and/or similarity, if any, to the disability

16  assessment pertinent to plaintiff's DI benefits claim.  Second, as argued by plaintiff, the minor

17  degenerative changes noted by these physicians related solely to her cervical spine, while the

18  limitations were assessed solely in relation to her shoulder impairments.  (*See id*.)  Third, while the

19  ALJ may have appropriately determined that the record lacked evidence of significant neurological

20  findings or degenerative changes limiting plaintiff's use of her arms, he failed to address the

21  significance of the opinion that the assessed limitations were based on the *progressive* nature of

22  plaintiff's shoulder impairments.  That is, it is not entirely clear whether Drs. Valpey and Brigham

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01  found plaintiff incapable of repetitively using her upper limbs or reaching overhead, or whether

02  they advised against such usage in order to avoid further deterioration.  As reflected below, any

03  restriction on plaintiff's use of her arms implicates the ALJ's RFC assessment and any findings at

04  steps four and five.

05       Given the above, the undersigned concludes that the ALJ's assessment of the opinions of

06  Drs. Valpey and Brigham is not supported by substantial evidence.  On remand, the ALJ should

07  reassess the opinions of these examining physicians.[2]

08                               Credibility

09       Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

10  reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  *See*

11  *also Thomas*, 278 F.3d at 958-59.  In finding a social security claimant's testimony unreliable, an

12  ALJ must render a credibility determination with sufficiently specific findings, supported by

13  substantial evidence.  "General findings are insufficient; rather, the ALJ must identify what

14  testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81

15  F.3d at 834.  "We require the ALJ to build an accurate and logical bridge from the evidence to her

16  conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."

17  *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the

18  ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between

19  his testimony and his conduct, his daily activities, his work record, and testimony from physicians

20  and third parties concerning the nature, severity, and effect of the symptoms of which he

21  _____

22       [2] Plaintiff did not argue and the undersigned does not find that the opinions of Drs. Valpey and Brigham should be credited as true.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01 complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

02      The ALJ found plaintiff's testimony not credible to the extent that it may be interpreted

03 to mean that she has pain and other functional limitations so severe as to preclude all work

04 activity. (AR 28.)  He explained and supported this finding as follows:

> The claimant testified at the hearing that she is unable to work because of pain in her neck and shoulders caused by bursitis and arthritis. She described her shoulder pain as jabbing and stabbing and stated that it is worse on the left side. She noted that her pain is so severe it interferes with her sleep. Therefore, she needs to nap during the day because of fatigue. The claimant also claimed that she has tingling and numbness in her extremities and cannot lift her arms above her head. She reported that she still sees Dr. Steneker twice a month, but mainly goes to these appointments because it is required by L&I. She has not sought any additional treatment from a specialist such as an orthopedic surgeon.

> The claimant testified that she takes anticonvulsants, due to her history of a seizure in the hospital after her surgery. However, she has not had a seizure since she left the hospital. The claimant did state however that she has problems concentrating, forgets things, and still requires the occasional use of a cane to help her walk because of balance problems. The claimant noted that these problems did not exist before her surgery, which leads to the conclusion that the claimant feels these symptoms are related to her brain tumor and surgery. There is no demonstration in the record that claimant requires a cane for balance, and there is no indication that her alleged memory problems or concentration difficulties are any different from those of other people of advancing age. The psychiatrist who examined her, Dr. Jarvis, found no evidence of any mental limitations.

> In regard to her activities of daily living, the claimant testified that she lives with her daughter who moved in after her brain surgery in January 2003. She stated that she likes to read and tries to walk around her circular driveway a couple of times a day. The claimant reported that she cannot perform any household chores or cooking, and her daughter does all of this work. In addition, she stated that she must make sure her daughter is home before she takes a shower, due to her tendency to lose her balance. The claimant did not make any mention of her granddaughter or any activities involving her granddaughter. These reports are inconsistent with the reports she made to Dr. Jarvis. I accord no weight to claimant's changed reports and the fact of those inconsistencies renders her entire reportage unreliable. Discrepancy between earlier recorded statements and testimony at hearing may provide grounds to disbelieve later testimony.

The claimant is a 55 year old female with college level education and past work experience as a cashier and molder. Her earnings records show a good work history prior to the alleged onset date of disability. However, the earnings records also establish that the claimant averaged approximately $20,000 to 30,000 in income in the 10 years prior to her alleged onset date. During the hearing, she testified that her L&I benefit is approximately $19,000 per year, which compares favorably with the claimant's earnings level in the 10 years prior to her alleged onset date. Motivation and the issue of secondary gain can be considered when assessing a claimant's credibility. In this case, the fact that the claimant is receiving almost the same financial benefit when not working as she did when working full time suggests that she may not be highly motivated to return to work.

The objective medical evidence, when considered as a whole, does not support a finding that the claimant's medical impairments would cause the degree of limitations alleged. The claimant testified during the hearing that she has severe pain in her neck and shoulders. She stated that she is shaky on her feet, cannot walk over rough surfaces, and requires a cane to aid ambulation at times. The claimant also reported that she has tinging and numbness in her extremities, cannot lift her hands above her head, cannot sleep at night due to her pain, and needs to nap during the day because of fatigue.

However, the claimant's physical examinations and diagnostic testing are unremarkable. MRIs and X-rays show only moderate degenerative changes in the left shoulder, no degenerative changes in the right shoulder, and mild degenerative changes in the cervical spine. The claimant has displayed some evidence of muscle spasm and reduced range of motion during her physical examinations, but her muscle strength, reflexes, and sensation are all normal. There are no neurological deficits.

Although the claimant did have a brief problem with her ability to ambulate immediately after her brain surgery, these [sic] quickly improved, and there has not been any evidence of gait problems since March 2003.

No physician has recommended the claimant use a cane to aid ambulation and no physician has ever reported a physical impairment that would impact the claimant's ability to walk.

The claimant has also received relatively conservative treatment for her impairments considering the severity of her allegations. The claimant has received the bulk of her treatment from Dr. Steneker, a primary care physician who has accepted her subjective complaints without question.

Despite finding the claimant unable to sit, stand, or walk for more than 30 minutes at a time, Dr. Steneker has not referred the claimant for any further neurological or

01    orthopedic testing.

02    The claimant likewise has not sought any additional treatment, except for a second opinion, during which the claimant appeared much more interested in qualifying for
03    disability insurance then she did in treating her pain.

04    The claimant also testified at the hearing that she has concentration deficits and memory loss. She noted that these limitations did not exist prior to her brain tumor
05    and surgery. However this testimony is in sharp contradiction to her reports to her treating neurologist and consultive examiners.

06

07    In May 2003, the claimant's neurologist stated that the claimant was alert and able to answer question and follow commands without any difficulties. During follow up
08    examinations performed in 2004, the claimant did not report any problems to the contrary.

09    Similarly in October 2003, the claimant told Dr. Jarvis that she had experienced a brief problem with memory after her brain surgery, but has recovered "pretty good" within
10    a few months. Dr. Jarvis's mental status examination did not show any evidence of deficits in memory, concentration, or attention. The claimant could make change,
11    perform serial sevens, and think abstractly. The inconsistencies in the claimant's statements during the hearing and those made to her physicians call into question the
12    validity of her testimony.

13    The claimant has also made inconsistent statements regarding her activities of daily living. The claimant testified at the hearing that she is quite limited, requiring her
14    daughter to perform all of the household chores, cooking and cleaning. However, during her consultive examination with Dr. Jarvis in October 2003, the claimant
15    reported that she takes care of her own self care tasks without difficulty and does her own cooking, shopping, and light housekeeping. In addition, she was quite involved
16    with her granddaughter, getting her up and off to school in the morning, attending her Tae Kwon Do lessons twice a week, and helping her with homework most nights. The
17    claimant was also reading, gardening, watching television, socializing, and going to movies. Instead of being severely limited, the claimant's reports to Dr. Jarvis indicate
18    that she is able to perform most activities of daily living without difficulty.

19    (AR 23-26; internal citations to record and case citations omitted.)  The ALJ also found evidence

20    of plaintiff's refusal of pain medication or injections to detract from her credibility.  (*See* AR 20

21    ("For a long period of time she refused prescription pain medications, despite her reports of pain

22    levels of up to 8 on a scale of 1 to 10. . . . This refusal of pain medication in the context of such

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01   a degree of pain detracts from the credibility of her allegations.") and AR 22 ("Dr. Kuehl noted

02   that the claimant showed no interest when asked if she would like injections for her pain. . . . This

03   disinterest does not enhance her credibility."))

04        Plaintiff first counters the ALJ's comments regarding pain medication with evidence to the

05   contrary. (*See*, *e.g.*, AR 218 (April 25, 2003 report, which was cited to by the ALJ, indicates that

06   Dr. Steneker prescribed "NSAIDs [nonsteroidal anti-inflammatory drugs] PRN, but that plaintiff

07   declined "any pain medications at this point in time otherwise."); AR 211 (May 12, 2003 report

08   by Dr. Steneker indicates that he prescribed NSAIDs and "[m]edication management including

09   Ultram 1-2 PO QUID PRN.")) (*See also* Dkt. 14 at 16-17 (providing numerous citations to the

10   record to support the contention that it appears that plaintiff was taking pain medication during

11   the entire time period at issue).)  She next disputes the ALJ's reliance on her daily activities,

12   asserting that he failed to accurately characterize either her reports to Dr. Jarvis or her testimony

13   at the hearing.  (*See*, *e.g.*, AR 170-71 (for example, plaintiff reported to Dr. Jarvis: "'Then I try

14   to clean my kitchen.  Sometimes it takes me a couple of days.  I have to cut the laundry in half to

15   do it.  It hurts my shoulders.'"; "'My daughter comes and drives me to the grocery and helps if

16   it's a big meal.'"; "Light housekeeping.  I can't vacuum.  I get all swollen up.'"); and AR 331

17   (plaintiff's testimony, described *infra* at p. 18-19).)  She asserts that, with respect to daily

18   activities, the question is whether an individual "'is able to spend a *substantial part* of [her] day

19   engaged in pursuits involving the performance of physical functions that are transferable to a work

20   setting,'" and that one need not be "'utterly incapacitated' in order to be disabled." *Vertigan*, 260

21   F.3d at 1049-50 (quoting *Morgan*, 169 F.3d at 600 and  *Fair*, 885 F.2d at 603).  Plaintiff also

22   argues that, because no physician has opined that she is malingering or motivated by secondary

01  gain, the ALJ's conclusion that she may not be highly motivated to return to work is speculative

02  and not supported by substantial evidence.

03      Finally, plaintiff takes issue with the ALJ's conclusion that "[t]he objective medical

04  evidence, when considered as a whole, does not support a finding that the claimant's medical

05  impairments would cause the degree of limitations alleged." (AR 24.) She asserts that an

06  individual alleging disability based on subjective symptoms need only show (1) objective medical

07  evidence of an underlying impairment and (2) that the impairment could reasonably be expected

08  to produce *some* degree of symptom. *See Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir.

09  1996). Plaintiff adds that, with respect to the latter showing, an individual need not show that her

10  impairment could be expected to cause the severity of the symptom alleged, only that it could have

11  caused some degree of the symptom. *Id*. at 1282.

12      As argued by plaintiff, it does appear that the ALJ failed to accurately characterize her

13  testimony at the hearing. Contrary to the ALJ's contention (*see* AR 24-25), plaintiff did not testify

14  that she could not perform any household chores or cooking, and that her daughter does all of this

15  work. She testified that vacuuming, getting laundry out of the washing machine, and doing dishes

16  exacerbated her shoulder pain, and that her daughter "generally" cooked dinner. (AR 331-32.)

17  Also, plaintiff did mention her granddaughter (*see* AR 323), and while she did not discuss any of

18  her activities involving her granddaughter, there were no questions asked that would have elicited

19  such a response. That is, instead of a question as to how she spent a typical day, there was one

20  general question as to what she was doing with her time – to which she answered reading – and

21  a series of specific questions, including what she did for exercise, whether she had any trouble

22  bathing or getting dressed, what activities exacerbated her shoulder and foot pain, what her

01 sleeping and rest patterns were, and whether she had any restrictions in her ability to drive and

02 shop.  (*See* AR 324, 330-34.)

03        On the other hand, despite omitting some details regarding her daughter's involvement,

04 the ALJ accurately described plaintiff's reports to Dr. Jarvis.  (*See* AR 25-26 and 170-71.)  While

05 "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping,

06 driving a car, or limited walking for exercise, does not in any way detract from her credibility as

07 to her overall disability[,]" *Vertigan*, 260 F.3d at 1049, the ALJ here pointed to evidence of more

08 extensive activities, including "getting her [granddaughter] up and off to school in the morning,

09 attending her Tae Kwon Do lessons twice a week, and helping her with homework most nights[,]"

10 as well as  "reading, gardening, watching television, socializing, and going to movies." (AR 26.)

11 Plaintiff does not demonstrate that the ALJ erred in considering these activities in his credibility

12 assessment.  *See*, *e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (noting the ALJ's

13 citation to the claimant's extensive daily activities and finding:  "It is true that Rollins' testimony

14 was somewhat equivocal about how regularly she was able to keep up with all of these activities,

15 and the ALJ's interpretation of her testimony may not be the only reasonable one. But it is still a

16 reasonable interpretation and is supported by substantial evidence; thus, it is not our role to

17 second-guess it.")

18        Additionally, while the record does show that plaintiff utilized pain medication, it also

19 reflects, as indicated by the ALJ, that she once declined any pain medication beyond NSAIDs on

20 an as needed basis, and was once "reluctant to getting injections for pain." (AR 218 and 250.)

21 Nor does plaintiff demonstrate error in the ALJ's discussion of motivation and secondary gain.

22 The ALJ supported his finding that plaintiff "may not be highly motivated to return to work[]"

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -19

01  with evidence that she was receiving almost the same amount in workers' compensation benefits

02  as she did while working full time.  (AR 24.)  He also pointed to evidence from Dr. Kuehl that

03  plaintiff "appeared much more interested in qualifying for disability insurance benefits then she did

04  in treating her pain."  (AR 25 (citing AR 251 (Dr. Kuehl stated in her November 24, 2003 report:

05  "Discussed options with the patient including anti-inflammatory medications, more physical

06  therapy or referral to a specialist for further work.  The patient is reluctant to pursue any of these

07  options.  She is mostly interested in completing disability paperwork."))

08          Finally, plaintiff fails to demonstrate error in the ALJ's reliance on a lack of supportive

09  objective medical evidence.  Where the record shows "the existence of a medically determinable

10  impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding

11  as to the credibility of the claimant's statements about the symptoms and their functional effect."

12  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing SSR 96-7p).  An ALJ may

13  not reject subjective pain testimony based solely on a lack of objective evidence fully corroborating

14  the alleged severity of the pain.  *Id.*; *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).

15  Moreover, in the absence of evidence of  malingering, an adverse credibility finding must be

16  accompanied by specific findings and supported by clear and convincing reasons.  *Robbins*, 466

17  F.3d at 883 (citing *Smolen*, 80 F.3d at 1283-84).  Also, the medical evidence remains "a relevant

18  factor in determining the severity of the claimant's pain and its disabling effects."   *Rollins*, 261

19  F.3d at 857.  In this case, the ALJ did not rely solely on a lack of supporting objective medical

20  evidence in rejecting plaintiff's subjective pain testimony.  Instead, as reflected in the extensive

21  credibility assessment excerpted above, he made numerous specific findings and provided clear and

22  convincing reasons to support his decision.

01        In sum, the Court agrees with plaintiff as to an error in the ALJ's credibility assessment

02  in only one respect.  As noted by the Commissioner, a single error need not negate the validity of

03  an ALJ's ultimate credibility conclusion otherwise supported by substantial evidence.  *See Batson*

04  *v. Commissioner, Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).  However, in this case,

05  the undersigned finds the ALJ's mischaracterization of plaintiff's testimony sufficiently significant

06  so as to warrant further consideration of plaintiff's credibility.  Additionally, given the other errors

07  addressed herein, the ALJ's credibility assessment may be implicated and require further

08  consideration on remand.  Accordingly, on remand, the ALJ should reassess plaintiff's credibility

09  with specific emphasis on plaintiff's actual testimony at the hearing and on any effect stemming

10  from further consideration of the other issues addressed herein.

11                                    Lay Witness Testimony

12        Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

13  to work is competent evidence.  *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The

14  ALJ can reject the testimony of lay witnesses only upon giving reasons germane to each witness.

15  *See Smolen*, 80 F.3d at 1288-89 (finding rejection of testimony of family members because, *inter*

16  *alia*, they were "'understandably advocates, and biased'" amounted to "wholesale dismissal of the

17  testimony of all the witnesses as a group and therefore [did] not qualify as a reason germane to

18  each individual who testified.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

19  *Accord Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("[L]ay testimony as to a claimant's

20  symptoms is competent evidence that an ALJ must take into account, unless he or she expressly

21  determines to disregard such testimony and gives reasons germane to each witness for doing so.")

22  Moreover, as recently found by the Ninth Circuit:  "[W]here the ALJ's error lies in a failure to

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -21

01  properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot

02  consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully

03  crediting the testimony, could have reached a different disability determination." *Stout v.*

04  *Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

05       Here, plaintiff's sister, Janet Leone, stated that plaintiff was "very limited," noting

06  limitations stemming from her shoulder impairment and that plaintiff had to write down things to

07  remember and is confused by changes in routine. (AR 92-98.) The ALJ considered this testimony

08  and found:

09       I am unable to credit this lay testimony in this matter as probative in terms of the
         ultimate issue of disability in light of the medical and other factors of this case. One

10       reason for which an ALJ may discount lay testimony is that it conflicts with medical
         evidence. Material inconsistencies between claimant's testimony and other evidence

11       in the record are "germane" to discounting lay testimony.

12       . . .

13       I conclude that the lay testimony in this case cannot outweigh my analysis of the
         objective clinical and laboratory evidence, and medical opinion of record, and of

14       claimant's own credibility. In other words, as the trier of fact in this matter, I find the
         subjective elements of proof offered in this case, even with lay corroboration of

15       activities and behavior, cannot carry claimant's burden of proof of disability.

16  (AR 26-27; internal citations to record and case citations omitted.)

17       Plaintiff argues that the ALJ did not provide germane reasons to discount the lay witness

18  testimony. The Commissioner asserts that the ALJ properly discounted the testimony as conflicting

19  with the medical evidence. *See*, *e.g.*, Lewis, 236 F.3d at 511. However, the ALJ failed to explain

20  how the lay witness testimony conflicts with the medical evidence. In fact, he did not point to any

21  specific medical evidence inconsistent with the testimony. As a result, the ALJ failed to provide

22  a sufficiently specific germane reason for the rejection of this testimony. Accordingly, the ALJ

01 should reassess the lay witness testimony on remand.

02 <u>Past Relevant Work</u>

03    At step four, the ALJ found as follows:

04 The claimant retains the ability to perform the exertional and requirements of most
light work. She can lift and carry up to 10 pounds frequently and up to 20 pounds
05 occasionally. In addition, she is able to sit stand, and walk for about 6 hours in an 8
hour work day, but should only perform occasional climbing of ladders, ropes and
06 scaffolds. The claimant should avoid concentrated exposure to hazardous working
conditions, such as working at heights or around dangerous machinery. The claimant
07 does not have any limitations in her ability to reach or use her arms repetitively.

08 The next issue to be considered is whether the claimant is able to perform her past
relevant work given her current residual functional capacity. The claimant's past
09 relevant work as a molder and cashier are both performed in the national economy at
a light exertional level. The job of molder ([Dictionary of Occupational Titles (DOT)]
10 739.687-030 and 779.684-050) would require the claimant to work around moving
machinery, which the claimant should avoid, and she would not be able to return to
11 this type of work.

12 However, the claimant could perform her past relevant work as a cashier (DOT
211.462-010). The claimant reported that when she performed this job she was not
13 required to do any lifting of more than 10 pounds, never reached for more than 10
minutes, and always had help carrying groceries to the shelves. Consequently, even
14 if I gave full credence to the claimant's allegations that she cannot reach overhead
with her arms; she would still be able to perform her past work as previously
15 performed.

16 (AR 27-28; internal citations to record omitted.)

17    Plaintiff maintains that the ALJ erred in determining that she could return to her past

18 relevant work as a cashier because it is not clear that this job qualifies as past relevant work. Social

19 Security regulations provide that work performed more than fifteen years prior to the date of

20 adjudication is not relevant at step four.   *See* 20 C.F.R. § 416.965(a).  Plaintiff argues that the

21 record does not establish whether she worked as a cashier since February 6, 1990 – fifteen years

22 from the date of the ALJ's February 6, 2005 decision.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -23

01          In making his step four decision, the ALJ cited a work history report filled out by plaintiff.

02   (*See* AR 28.)  In that report, plaintiff stated that she worked as a molder for Pacific Research from

03   October 2000 to "now," and worked as a cashier at a BP gas station from the summer of 1998 to

04   1999.  (AR 78.)   Plaintiff argues that other evidence in the record contradicts this work history

05   report.   For example, in an October 23, 2003 examination, plaintiff reported that she began

06   working as a molder in 1990 and previously "had held a couple of cashier jobs."  (AR 161, 163.)

07   In an examination on the following day, she reported that she had worked as a molder for twelve

08   years. (*See* AR 170.)  Other records reflect that plaintiff worked at Pacific Research as a molder

09   from October 1990 to February 1, 2002 and as a small products assembler from February 1, 2002

10   to July 11, 2002, and worked as a cashier, or grocery and gas clerk, from 1988 to 1991.  (*See* AR

11   302, 304 and 306.)

12          However, as argued by the Commissioner, plaintiff fails to demonstrate that the ALJ erred

13   in finding plaintiff had past relevant work as a cashier.  The ALJ appropriately relied on a work

14   history report plaintiff filled out and in which she described her cashier job in detail.  (*See* AR 80.)

15   *Cf.* SSR 82-62 ("The claimant is the primary source for vocational documentation, and statements

16   by the claimant regarding past work are generally sufficient for determining the skill level;

17   exertional demands and nonexertional demands of such work.")  The undersigned further notes

18   that a tax report included in the record shows substantial earnings in 1998 and 1999, but almost

19   no earnings from 1988 to 1990, the period of time during which she alleged in another report that

20   she worked as a cashier.  (*See* AR 58-60.)  Also, although the allegedly contradictory evidence

21   pointed to by plaintiff did not include her cashier job in 1998 and 1999, it did not exclude the

22   possibility that her job at Pacific Research was not continuous and that she performed another job

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -24

01  during her twelve years as a molder.  At the same time, because the ALJ will need to reassess

02  plaintiff's ability to perform work as a cashier for the reason identified below, he should also take

03  the opportunity to confirm whether she, in fact, actually has this past relevant work.

04        During oral argument, plaintiff noted that, although the ALJ cited relevant DOT provisions

05  in his step four analysis, he also specifically relied on plaintiff's own job description in the work

06  history report in determining her ability to work as a cashier. (*See* AR 28 (citing AR 80).)

07  Plaintiff points out that, based on the work history report, her cashier job required her to stand

08  eight to nine hours per day.  (*See* AR 80).  She argues that, because the ALJ found she could only

09  sit, stand, and walk for about six hours in an eight hour work day, she is not able to perform the

10  cashier job as previously performed.

11        As stated in SSR 82-61:

12        Under sections 404.1520(e) and 416.920(e) of the regulations, a claimant will be
          found to be "not disabled" when it is determined that he or she retains the RFC to
13        perform: 1. The actual functional demands and job duties of a particular past relevant
          job; or 2. The functional demands and job duties of the occupation as generally
14        required by employers throughout the national economy.

15  "[The Ninth Circuit has] never required explicit findings at step four regarding a claimant's past

16  relevant work both as generally performed *and* as actually performed." *Pinto v. Massanari*, 249

17  F.3d 840, 845 (9th Cir. 2001).  However, the ALJ is not "in any way relieved of his burden to

18  make the appropriate findings to insure that the claimant really can perform his or her past relevant

19  work." *Id.*  Also, while the ALJ "may rely on the general job categories of the [DOT] . . . as

20  presumptively applicable to a claimant's prior work[,]" the claimant "may overcome the

21  presumption that the [DOT's] entry for a given job title applies to him by demonstrating that the

22  duties in his particular line of work were not those envisaged by the drafters of the category." *Villa*

01 | *v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986) (internal citations omitted).

02 |       Here, the ALJ failed to clarify whether he based his step four determination on plaintiff's

03 | past relevant work as she actually performed it or as it is generally performed.  If he relied on

04 | plaintiff's past relevant work as actually performed, he erred in ignoring the standing requirement

05 | in plaintiff's job description.  If he relied on the work as it is generally performed, issues arise

06 | related to plaintiff's alleged arm-related limitations.  As reflected above, the ALJ found plaintiff

07 | capable of cashier work even if he fully credited her allegation that she could not reach overhead.

08 | Also, Drs. Valpey and Brigham found plaintiff limited in her ability to reach overhead or

09 | repetitively use her arms and the opinions of these physicians require further assessment on

10 | remand.  The DOT job description the ALJ cited does not reflect any specific requirement for the

11 | use of arms.  *See* DOT 211.462-010.  Yet, even if the ALJ read and relied on the DOT description

12 | as not requiring any overhead or repetitive arm use, plaintiff could attempt to overcome the

13 | presumption that the job title applied to him.  *See Villa*, 797 F.2d at 798.

14 |       Accordingly, on remand, the ALJ must clarify whether he is considering plaintiff's past

15 | relevant work as actually or generally performed.  The assistance of a vocational expert may be

16 | required.  Moreover, should the ALJ find on remand that plaintiff cannot perform past relevant

17 | work as a cashier, or that she has no such past relevant work, he would need to proceed to step

18 | five.

19 | **<u>CONCLUSION</u>**

20 |       For the reasons set forth above, this matter should be REMANDED for further

21 | / / /

22 | / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -26

01 administrative proceedings.

02         DATED this <u>20th</u> day of July, 2007.

03

04                                      _____
                                        Mary Alice Theiler
                                        United States Magistrate Judge

05

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -27